IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Case No.: 12-224(GBL) |
| v. : | Sentencing: September 13, 2013 |
| : | |
| GILBERTO RAMOS, : | |
| Defendant. : | |

**DEFENDANT'S POSITION ON SENTENCING FACTORS**

Comes now, the defendant, GILBERTO RAMOS, by and through counsel and submits this position on sentencing factors pursuant to the United States Sentencing Guidelines and order of this Court.

**I.     Objections to the Presentence Investigative Report**

**Part A. Offense Conduct**

**Paragraph 26.** Co-defendant Antonio Sandoval testified at trial. He at no time described the defendant as a source of supply. Sandoval specifically stated as to the particular cocaine at issue "that cocaine, [defendant and I] got it from Los Angeles." (Transcript of March 12, 2013 at page 13). Moreover, there is no reliable evidence corroborating the claim in the report that defendant "coordinated with a Mexican supplier". So too, there is no basis for any inference that defendant was involved in importation at any level. And, it is indisputable from the evidence adduced at trial that defendant did not direct "the operation of the organization from California."

**Paragraph 38.** This paragraph relates to Rigo Espinoza. At trial Espinoza stated that he met defendant on one occasion in California. Espinoza conceded under oath that he was not involved in any enterprise with defendant. Espinoza further stated that he had no dealings with defendant. More importantly, Espinoza stated that he "had no

information or understanding that [defendant] was in any way involved in what [Espinoza] had going with Tony Sandoval". (Transcript of March 11, pages 219-221). On re-direct examination, Espinoza stated that Sandoval did not at any time identify his source of supply. (Id at page 222).

**Role in the offense**

**Paragraph 57.** Maurice Krider testified that during the period "from 2010 to 2011" encompassed within the superseding indictment, the conspiracy involved shipments of 10, 12, 10 and 37 kilograms of cocaine. (Transcript of March 12, 2013 at page 182). The 150 plus kilograms adopted in the probation report far exceeds the 69 kilograms alleged by Krider to have been shipped during the applicable period.

**Paragraph 60.** Defendant clearly did not occupy a role superior to the functioning of Antonio Sandoval. That individual did not receive any increase for his role in the offense. In this context, it is plainly disingenuous to assign an increase to defendant in circumstances where no such role was advocated for Antonio Sandoval. Indeed, Maurice Krider testified at trial that the Sandoval brothers were "the heart of the enterprise". (Transcript of March 12, 2013 at page 192). And, subsequent to arrest of the Sandovals, Krider was unable to procure any additional cocaine despite the fact that defendant remained at liberty. (Id at page 193)

**Part B. Criminal History**

**Paragraph 68.** The presentence investigative report (PSR) indicates that the defendant was convicted of possession of marijuana in 1990 and sentenced to three years probation and 180 days in jail. Defendant was allegedly selling "baggies" of marijuana. Defendant was 20 years old. The PSR does not indicate whether defendant was

represented by counsel and/or whether the offense constitutes a prior drug felony. See, *Burgess v. United States* 553 U.S. 124 (2008).

**Worksheet A (Offense Level)**

1. Offense Level

    Guideline

    a. Worksheet A calculates a level 38 based upon 150 kg of cocaine or more. The relevant conduct period, as is adopted in the PSR, commences in January 2010. The testimony at trial (Maurice Krider) indicated that 69 kg of cocaine was allegedly within the contemplation of the conspiracy charged in the superseding indictment. None of the other evidence contradicted this testimony. Therefore, under the most strident analysis U.S.S.G. 2D1.1(a)5(c) (2) is applicable and establishes a level 36.

    b. Worksheet A erroneously states that the defendant rightfully received an adjustment under §3B1.1 and was directly involved in importation of cocaine from Mexico. As is set forth above, defendant does not qualify for the §3B.1.1 adjustment and there is no evidence that he was directly involved in the importation of cocaine from Mexico. Therefore, he should not receive either the 4 level §3B.1.1.1 adjustment or a 2 level increase.

2. Role in Offense Adjustment

    There is no applicable adjustment. Specifically, a §3B1. 1(a) adjustment is not warranted.

3. Adjusted Offense Level

The adjusted offense level is 36. This number is computed on the basis of 69 kg of cocaine and no adjustment for role and/or involvement in importation.

Worksheet D

    1.    Adjusted offense level = 36

    4.    Criminal History Category = I

    6.    Guideline Range = 188 to 235 months

**II.    Factors to Be Considered In Imposing a Sentence**

A sentencing court is required to consider the guidelines ranges, *see* 18 U.S.C.A 3553(a)(4)(Supp. 2004), but is permitted to tailor the sentence in light of other statutory concerns as well. Specifically, 18 USC 3553(a) notes, "[t]he court shall impose a sentence **sufficient, but not greater than necessary,** to comply with the purposes set forth in paragraph (2) of this subsection. Namely, a court should consider:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2)    the need for the sentence imposed—
        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B)    to afford adequate deterrence to criminal conduct;
        (C)    to protect the public from further crimes of the defendant; and
        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
    (3)    the kinds of sentences available;
    (4)    the kinds of sentence and the sentencing range established for—

      (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or

      (B)    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;

(5)    any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

In light of these factors the defendant submits a sentence consistent to that received by his similarly situated co-defendants is both reasonable and sufficient to satisfy the legitimate sentencing goals of 18 USC 3553(a)(6). He further submits the nature and circumstances of the offense and his history and characteristics supports such a sentence.

**III.    The Appropriate Sentence**

The defendant submits the proper advisory guideline range is 188 to 235 months. While the presentence report and the government avers that the Court is restricted to sentencing the defendant to a mandatory minimum sentence of at least 240 months, the defendant submits the United States Supreme Court's holding in *Alleyne v. United States*, 133 S.Ct. 21 51 (2013), permits this Honorable Court to consider a sentence below 240 months.

5

**The Nature and Circumstances of the Offense:**

The defendant stands convicted of a very serious felony drug trafficking conspiracy. The superseding indictment charged the defendant with participation in the offense for approximately 1 year. During that time drugs where shipped from California via commercial trucks to the eastern seaboard. The drugs were principally distributed in the New York and Washington, DC metropolitan areas. The proceeds of the conspiracy were returned to California via the same shipping method.

The conspiracy did not involve any perpetration of acts of violence. No evidence was adduced that the defendant engaged in the brandishing or use of any firearms during the commission of the offense. The distribution network involved approximately 10 individuals who played various roles in the acquisition, transportation, and distribution of the drugs.

**History and Characteristics of the Defendant:**

The defendant is a 44-year old father and husband. Prior to being charged in the instant matter he supported his family through his real estate business and hiring himself out as a handy man. He is a long time resident of California.

Since his incarceration the defendant has lost the ability to provide for his family. As a consequence he is overburdened by financial debt. His home is in foreclosure and his family's financial outlook is bleak.

Exclusive of the instant offense the defendant at age 18 was convicted of resisting arrest and at age 20 he was convicted of possession of marijuana. Both offenses arise out of California. Under California law, both are misdemeanor offenses. Each offense

occurred more than 20 years ago. Since that time the defendant has not been arrested or convicted of any violations of the law until now. He is a criminal history category I.

The defendant's history and characteristics do not suggests he is a high risk of reoffending. To the contrary, it suggests he is capable of conforming his behavior to the expectations of society. He has clearly demonstrated an ability to legally earn a living and provide for his wife and children. Unlike many involved in the drug trade there are no allegations that the defendant suffers from a drug addiction or some other affliction which would increase the likelihood that he would engage in future criminal behavior.

The defendant's lack of a history of violent behavior further mitigates the need for a harsh sentence. As this Honorable Court is all too familiar with, those who routinely engage in drug trafficking employ violence and intimidation to protect and promote their illegal operations. There is no evidence that this defendant elected to do the same. This Court should certainly consider this factor is fashioning an appropriate sentence.

**Sentences of Similarly Situated Defendants:**

3553(e) instructs a sentencing court to avoid unwarranted disparities between similarly convicted offenders. In this regards the defendant submits this Honorable Court should take into account the sentences of other similarly situated defendants convicted in this matter.

**Maurice Lee Krider**. Mr. Krider received shipments of cocaine from California. According to the evidence adduced by the government, the defendant organized and arranged these shipments. Mr. Krider pled guilty to conspiracy to distribute 5 kilograms or more of cocaine. This is the same offense for which a jury found the defendant guilty. Mr. Krider received a sentence of 100 months incarceration. His sentence is far less than

7

half the 240-month mandatory minimum sentence that the government advocates is the lowest sentence which the defendant should receive. It is a fraction of the life without the possibility of parole cited in the presentence report. Even if this Honorable Court sustains the objections of the defendant to the guideline calculation and adopts the 188-235 month range, Mr. Krider's sentence would still be substantially lower. As a co-conspirator the law holds Mr. Krider equally liable for the amount of drugs distributed which have been attributed to the defendant. While there may be factors which would justify a greater sentence for the defendant there simply is no legitimate reason to treat the defendant substantially different than his similarly situated co-defendant, Mr. Krider.

**Antonio Sandoval.** Mr. Sandoval received a sentence of 87 months. According to his testimony at trial he and the defendant were partners. He testified that he and the defendant obtained cocaine from California and caused it to be shipped to the eastern coast of the United States. It is difficult, if not impossible, to distinguish the roles allegedly played by Antonio Sandoval and the defendant.

Much like Mr. Krider, it would be patently unfair to sentence the defendant to a life sentence or 240 months when his similarly situated co-defendant received only 87 months. This injustice would only be magnified by a life sentence. Again, while factors may suggests a higher sentence for the defendant there is no justification for him receiving 3 times or more of a longer period of incarceration than Antonio Sandoval.

**Jesus Sandoval**. Mr. Sandoval received a sentence of 120 months. Mr. Sandoval was convicted of the same offense as the defendant. According to his testimony at the defendant's trial he was responsible for receiving shipments of cocaine from California in suburban Maryland. Mr. Jesus Sandoval then distributed the cocaine to a network of

8

dealers in the Washington, DC area for redistribution. In terms of drug quantity he is equally held accountable for the same quantity as attributed to the defendant.

No legitimate sentencing factor can be served by treating Jesus Sandoval substantially different than the defendant. Much like the previously discussed co-defendants, Mr. Jesus Sandoval's decision to plead guilty, and cooperate with the government may warrant a modest difference in ultimate sentences. However, there is no justification for such a disparity to be significant.

**Rigo Espinoza.** Mr. Espinoza testified at the trial of the defendant that he was recruited by Antonio Sandoval to transport cocaine. He testified to delivering multiple kilogram loads of cocaine in exchange for monetary compensation. Mr. Espinoza was not indicted in the instant matter. Upon information and belief, he pled guilty to a state offense in New York. As a consequence of his plea agreement in that matter he faced a sentence of less than 2 years.

**Tyrone Smith.** Mr. Smith served as a redistributor of the cocaine received by Jesus Sandoval and Maurice Krider. Mr. Smith was indicted in the District for the District of Columbia on felony drug charges. In exchange for his cooperation in the instant matter the charges pending against him for his involvement in this conspiracy were ultimately dismissed. As a consequence, Mr. Smith did not receive any period of incarceration for his involvement in the conspiracy charged in the superseding indictment.

120 months is the harshest sentence received by any co-defendant remotely similar to the defendant. The sentence suggested by the presentence report, life, or that proposed by the government far exceeds all previous sentences received by his equally

9

culpable co-defendants. The defendant concedes there are distinguishing factors between him and his former co-defendants. However, these differences do not warrant a significant difference in treatment.

### IV. Mandatory Minimum

Prior to trial the government filed notice of intention to seek an enhancement in the mandatory sentence pursuant to section 851 due to the defendant's prior criminal record. This notice would permit the government to seek a mandatory minimum sentence of 240 months if the defendant was convicted.

This sentencing factor was not alleged in the superseding indictment. It was not presented to the grand jury. It was not included as a special finding on the verdict form returned by the jury. As a consequence there has been no finding beyond a reasonable doubt that this sentencing factor was proven by the government.

The defendant submits that the failure of the jury to find beyond a reasonable doubt that the defendant's prior criminal record exposed him to an enhanced punishment now prohibits this Honorable Court from imposing an enhanced sentence pursuant to 851. The defendant direct the Court's attention to the United States Supreme Court holding in *Alleyne v. United States,* 133 S.Ct. 21 51 (2013)(In order to raise the mandatory minimum a prior drug felony must be presented to the jury and proved beyond a reasonable doubt).

### V. Forfeiture

The government seeks forfeiture of $6 million dollars of assets from the defendant. In doing so, the government fails to offer a factual basis for the dollar amount for which it seeks. In its motion the government avers that this is the amount alleged to

have been received by the defendant and his co-defendants during the conspiracy. The Court should deny this request. In the alternative, the Court should limit any forfeiture order to an amount attributable to the illegal proceeds gained during the conspiracy as charged in the superseding indictment.

The superseding indictment charged that the conspiracy existed from on or about January 2011 to August 2012. During the trial the defendant repeatedly objected to the introduction of any evidence of alleged drug distribution outside the scope of the conspiracy as charged in the superseding indictment. This Honorable Court routinely sustained the objections. As a consequence, the government was limited to presenting evidence relevant to the time period charged.

As cited above, Maurice Krider provided the clearest evidence of the amount of drugs shipped by the conspiracy during the relevant time period charged in the superseding indictment. According to Mr. Krider, a total of 69 kilograms of cocaine were shipped during the period charged by the grand jury. While the testimony at trial clearly demonstrated that the value of each kilogram sold by the conspiracy fluctuated, there is simply no factual basis to conclude 69 kilograms justifies a forfeiture order in the amount of $6 million.

## VI.   The Issue of Fines

The defendant submits he is without sufficient funds to satisfy even a minor fine in this matter. His current assets, financial responsibilities, and the prospect of further incarceration warrant this Honorable declining to impose any fine in this matter.

**VII.  Designation**

The defendant is a long time resident of southern California.  His wife and children reside in southern California.  In order to facilitate visitation with the defendant he respectfully requests that this Honorable Court recommend to the Bureau of Prisons that he be designated to a facility as close as possible to the southern California area.

**VIII.  Conclusion**

The defendant stands convicted of a serious felony offense.  There is no question the law requires a period of incarceration.  The jury's finding of guilt on the superseding indictment requires this Honorable Court to sentence the defendant to a minimum of 120 months.  In applying the relevant 3553 sentencing factors the defendant strongly urges this Honorable Court to consider the conduct and sentences of his similarly situated co-defendants.  Each co-defendant received a sentence between 87 and 120 months.

While each of his co-defendants elected to waive their respective Constitutional rights and plead guilty the defendant required the government to prove its case.  For this reason the advisory federal sentencing guidelines due to 3E1.1 suggest that the sentences of his co-defendants should be lower.  However, nothing could justify this defendant receiving a sentence significantly greater than his co-defendants.

While each played different roles, each co-conspirator engaged in drug distribution on the same scale.  Maurice Krider was a criminal category history IV.  Antonio Sandoval, like the defendant, was a criminal category history I.  Jesus Sandoval, was a criminal category history I but unlike the defendant, received an enhancement for

possession of a firearm during the commission of a drug offense. Krider and both Sandoval brothers received sentences no greater than 120 months.

In full consideration of the applicable mandatory minimum sentence, the proper advisory guideline range, and the 3553 sentencing factors discussed above, the defendant respectfully submits the Court sentence him to a period of 150 months. Such a sentence would incapacitate him for more than 13 years. Given his current age he would remain in prison until his 58th birthday. As a consequence it would promote respect for the law, deter others, deter this defendant, and reflect the seriousness of the offense. It would further represent approximately twice the sentence originally received by his co-defendant Antonio Sandoval. As the record clearly demonstrates, the defendant's role in the offense was most comparable to that of Antonio Sandoval. It would represent the longest prison sentence imposed on any member of the conspiracy.

                         Respectfully submitted,
                         GILBERTO RAMOS
                         By Counsel

_____/s/_____
Robert L. Jenkins, Jr.
Bynum & Jenkins, PLLC
VIRGINIA STATE BAR NO.: 39161
1010 Cameron Street
Alexandria, VA  22314
703 309 0899 Telephone
703 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for defendant GILBERTO RAMOS

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused a true copy of the foregoing to be served on all counsel of record via ECF on September 6, 2013.

_____/s/_____
Robert L. Jenkins, Jr.
Bynum & Jenkins, PLLC
VIRGINIA STATE BAR NO.: 39161
1010 Cameron Street
Alexandria, VA 22314
703 309 0899 Telephone
703 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for defendant GILBERTO RAMOS