IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| GILBERTO RAMOS, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | No. 1:18-cv-152 (LMB) |
| ) | Crim. No. 1:12-cr-224-1 (LMB) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Before the Court is movant Gilberto Ramos's ("movant" or "Ramos") Motion to Vacate Under 28 U.S.C. § 2255 [Dkt. No. 200], in which he asks the Court to vacate his sentence and re-sentence him to a shorter term of imprisonment because he was sentenced pursuant to a statutory mandatory minimum triggered by a previous state felony conviction that has since been recalled and redesignated as a misdemeanor. For the reasons that follow, Ramos's motion will be dismissed.

### I. BACKGROUND

On August 30, 2012, a grand jury in the Eastern District of Virginia returned a superseding indictment against Ramos and two co-conspirators that charged each defendant with conspiring to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841, 846. [Dkt. No. 61]. Three weeks later, the government filed a notice pursuant to 21 U.S.C. § 851 that Ramos had previously been convicted in California state court of one count of felony Possession of Marijuana for Sale in violation of California Health & Safety Code § 11359. [Dkt. No. 72]. As the § 851 notice explained, because this prior conviction was a felony drug offense, it exposed Ramos to enhanced punishment under 21 U.S.C. §§ 841, 846. Id. Ramos proceeded to trial, and a

jury convicted him of the single count in the indictment. [Dkt. No. 127].[1] In addition, on the special verdict form, the jury indicated that it found that Ramos had conspired to distribute 5 kilograms or more of cocaine. Id.

According to the Presentence Report ("PSR"), the conspiracy in which Ramos was engaged revolved around the importation of cocaine from Mexico and its subsequent distribution along the East Coast of the United States of America. PSR ¶¶ 24-26. In particular, the conspirators regularly coordinated shipments of cocaine from Mexico to California and then smuggled multiple-kilogram quantities of the drug to the Washington, D.C., and New York areas in long-haul tractor trailers. Id. After the drugs were transported to the East Coast and sold to other distributers, the conspirators smuggled bulk shipments of cash back to California. Id. ¶¶ 27-28, 35-36. The PSR stated that Ramos "led the conspiracy by organizing "the receipt of cocaine from sources in Mexico, the packaging of the cocaine and shipment of the cocaine across the United States, and the transfer of the proceeds back to California." Id. at A-2 to A-3.

Based on the quantity of drugs involved in the conspiracy, as well as Ramos's role as an organizer or leader in the conspiracy, the Probation Office calculated the Adjusted Offense Level under the Sentencing Guidelines as a 40. Id. Worksheet A. When combined with Ramos's criminal history score of I,[2] this produced a guideline range of 292 to 365 months imprisonment. At the sentencing hearing, Judge Gerald Bruce Lee[3] adopted this as the appropriate guideline range, see Sentencing Tr. [Dkt. No. 164] 29:17-:24, but imposed a below-guidelines sentence of

---

[1] Of Ramos's two co-defendants, one pleaded guilty and the other was, as of the time of Ramos's sentencing, still a fugitive. Presentence Report [Dkt. No. 158] ¶¶ 16-17.

[2] Although Ramos had a prior conviction for a felony drug offense in California, as previously discussed, he did not receive any criminal history points for that conviction because the sentence of imprisonment he received for that offense concluded more than ten years before the conduct in the present conspiracy began.

[3] Judge Lee has since retired, and this criminal case has been reassigned to the undersigned judge.

240 months imprisonment, the statutory mandatory minimum given the enhancement for Ramos's previous drug conviction, id. at 47:6-:8. The Fourth Circuit affirmed the district court's judgment on appeal and the Supreme Court denied Ramos's petition for a writ of certiorari. United States v. Ramos, 571 F. App'x 177 (4th Cir.) (per curiam), cert. denied, 135 S. Ct. 882 (2014).

On November 17, 2015, Ramos, proceeding pro se, filed a motion to vacate his conviction under 28 U.S.C. § 2255 [Dkt. No. 177], which raised a variety of arguments that are unrelated to the present motion. The district court denied Ramos's motion [Dkt. No. 183], and the Fourth Circuit declined to issue a certificate of appealability. Ramos v. United States, 670 F. App'x 81 (4th Cir. 2016) (per curiam).

In November 2016, California voters approved the Control, Regulate, and Tax Adult Use of Marijuana Act, 2016 Cal. Legis. Serv. Prop. 64 ("Proposition 64"), which reduced various drug offenses, including the possession of marijuana for sale, from felonies to misdemeanors. In addition, Proposition 64 provides that an individual who has completed his previously imposed sentence for a conviction under a statute which Proposition 64 reduces from a felony to a misdemeanor may file an application before the trial court that entered the judgment of conviction to have the felony redesignated as a misdemeanor. See Cal. Health & Safety Code § 11361.8(e). If such an application is granted, the conviction "shall be considered a misdemeanor . . . for all purposes." Id. § 11361.8(h). On February 14, 2017, the Los Angeles County Superior Court granted Ramos's motion to redesignate his previous state conviction as a misdemeanor. Mot. [Dkt. No. 200] Ex. A. Based on this redesignation, Ramos filed the present § 2255 motion, arguing that his California state conviction no longer qualifies as a "felony drug offense" for the purposes of an enhancement under § 841, and that Ramos's current sentence,

3

which may reflect the § 841 enhancement that was triggered by the government's § 851 notice, therefore violates both the plain language of § 841 and Ramos's "constitutional rights to due process [and] protection from cruel and unusual punishment," as well as "principles of federalism." Mot. 6. The motion has been fully briefed, and the Court has reviewed the papers and finds that oral argument would not aid the decisional process. For the reasons that follow, the Motion to Vacate will be dismissed.

## II. DISCUSSION

### A. Standard of Review

Although federal convictions are ordinarily final, an individual who is in custody pursuant to a federal sentence may file a motion to vacate his conviction or sentence under 28 U.S.C. § 2255. Such a motion will be granted only if "the sentence was imposed in violation of the Constitution or laws of the United States," the "court was without jurisdiction to impose such sentence," the "sentence was in excess of the maximum authorized by law," or the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The burden is on the movant to establish the claimed error by a preponderance of the evidence. See Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam).

### B. Analysis

#### 1. Second or Successive § 2255 Motion

In general, before a defendant can file a second or successive motion for relief under § 2255, the motion must be certified by the appropriate court of appeals to contain either "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense" or "a new rule of constitutional law, made retroactive to

cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h). Although the current motion is Ramos's second motion under § 2255, he did not obtain an appropriate certification from the Fourth Circuit. Accordingly, the government argues that Ramos's motion should be dismissed for lack of jurisdiction. Gov't Opp. 5-6.

The government's argument is unavailing because "it is settled law that not every numerically second petition is a 'second or successive' petition within the meaning" of § 2255(h). United States v. Hairston, 754 F.3d 258, 262 (4th Cir. 2014) (internal quotation marks omitted). Instead, a "claim which did not arise until after a prior petition was filed" is not barred as "second or successive," which means that "a numerically second § 2255 motion should not be considered second or successive pursuant to § 2255(h) where . . . the facts relied on by the movant seeking resentencing did not exist when the numerically first motion was filed and adjudicated." Id. Ramos's motion fits comfortably into this exception. The basis for the motion is the redesignation of his California state conviction as a misdemeanor, which did not occur until February 2017, after his first § 2255 motion was adjudicated. Accordingly, Ramos is relying on facts that did not exist at the time his first motion was filed and adjudicated, and the current motion is not a "second or successive" motion within the meaning of § 2255(h). Cf. id. (holding that movant's numerically second motion was not covered by § 2255(h) where his motion was based on the vacatur of a state conviction that occurred after his first motion was adjudicated).

2. Statutory Analysis

Moving to the merits of his claim, Ramos first argues that the redesignation of his California conviction means that he is no longer subject to the enhancement under § 841; however, based on the plain language of the provision, Ramos is incorrect. The sentencing enhancement which was applied to Ramos provides that a mandatory minimum sentence of 20

5

years imprisonment is required if "any person commits [a violation of the statute involving 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine] after a prior conviction for a felony drug offense has become final." 21 U.S.C. § 841(b)(1)(A). "[A]s a matter of plain statutory meaning there's . . . no question that" Ramos "engaged in a second drug offense after a conviction for a first one." United States v. Dyke, 718 F.3d 1282, 1292 (10th Cir. 2013) (internal quotation marks omitted).

This conclusion is bolstered by the analysis in a recent Ninth Circuit case, where the court confronted whether the reclassification of a defendant's felony to a misdemeanor pursuant to California's Proposition 47, which operates similarly to Proposition 64 but with respect to a different set of offenses, required resentencing when the defendant had received an enhancement under § 841. United States v. Diaz, 838 F.3d 968 (9th Cir. 2016). As the Ninth Circuit explained, the plain language of § 841 is "backward-looking," as the "statute tells us what event triggers the enhancement": a state conviction that is final. Id. at 973. Therefore, even where a state such as California has chosen to "fully eradicate[] a predicate state conviction," the defendant still "committed his [federal] crime after a prior state felony conviction ha[d] become final." Id. at 974 (internal quotation marks and alteration omitted). Accordingly, the Ninth Circuit persuasively held that "Proposition 47, offering post-conviction relief by reclassifying certain past felony convictions as misdemeanors, does not undermine a prior conviction's felony-state for purposes of § 841." Id. at 975.

For these reasons, the Court rejects Ramos's contention that the reclassification of his previous conviction pursuant to Proposition 64 entitles him to resentencing under § 841 because, regardless of California's subsequent treatment of his felony conviction, he is an individual who committed an offense under § 841 after a prior conviction for a felony drug offense had become

6

final. Accordingly, under the plain language of the statute, Ramos remains eligible for the enhancement.

### 3. Constitutional Analysis

Although Ramos is not entitled to resentencing under the language of the statute, the necessary analysis does not end there. Ramos also argues that he has a Constitutional right based on due process, the Eighth Amendment, and "principles of federalism" to resentencing now that the prior conviction has been vacated. The Court will consider each argument in turn.

As Ramos correctly argues, there is a line of case law establishing that "[i]f a now-vacated conviction was clearly taken into account in [a defendant's] sentencing determination," due process "requires reconsideration of the sentence based only on accurate information about the defendant's prior criminal history." Hammonds v. Johnson, No. 7:09-cv-365, 2010 WL 2244389, at *4 (W.D. Va. Apr. 29, 2010); see also, e.g., Johnson v. United States, 544 U.S. 295, 303 (2005) (holding that a defendant is entitled to resentencing where a state vacates one of the convictions that was used to support an enhancement under the Sentencing Guidelines); United States v. Tucker, 404 U.S. 443 (1972) (holding that it is constitutional error to sentence a defendant "on the basis of assumptions concerning his criminal record which were materially untrue" and, specifically, to give consideration to previous convictions that "were wholly unconstitutional under Gideon v. Wainwright, 372 U.S. 335 (1963)"); United States v. Dorsey, 611 F. App'x 767, 769 (4th Cir. 2015) (per curiam) ("[W]e have concluded that sentence enhancements based on previous convictions should be reconsidered if those previous convictions are later vacated.").[4]

---

[4] Ramos also argues, in a slightly different line of reasoning, that Hicks v. Oklahoma, 447 U.S. 343, establishes that upholding the mandatory sentence enhancement would violate due process, Mot. 16-17; however, Hicks is inapposite. In that case, the Oklahoma courts had upheld the

7

As these cases make clear, their rule is limited to situations where a defendant's predicate offenses are later vacated or otherwise found to be invalid, typically either because the defendant has successfully advanced an actual innocence claim or because the conviction was obtained in violation of the defendant's Constitutional rights. It is only when a sentencing court relies on such a conviction that it makes an "assumption[] concerning [defendant's] criminal record" that was "materially untrue" or bases a sentence on "misinformation of constitutional magnitude." Tucker, 404 U.S. at 447 (internal quotation marks omitted). By contrast, Ramos does not have any claim that he was actually innocent of the conduct underlying his California conviction, nor does he argue that the conviction was tainted by any error. Instead, Proposition 64 appears to represent a policy determination by the people of California that marijuana-related offenses ought no longer be treated as felonies and that individuals with convictions for such offenses should receive, as a matter of grace, some relief from the collateral consequences that flow from such convictions. Due process does not require the federal courts to give retroactive effect to this policy determination, and the reclassification of Ramos's conviction under Proposition 64 in no way undermines the historical fact of his conviction. Accordingly, in applying the § 841 enhancement, the sentencing court made no assumption about Ramos's criminal record that was materially untrue or otherwise relied on misinformation of a constitutional nature, and the continued application of the enhanced sentence does not violate Ramos's due process rights.

---

imposition of a mandatory forty-year prison term pursuant to an Oklahoma habitual offender statute that had been declared unconstitutional, reasoning that the error generated by applying the unconstitutional mandatory statute was harmless because the forty-year sentence was within the statutorily authorized range even without the habitual offender enhancement. See id. at 345. The Supreme Court disagreed, holding that Oklahoma had established a substantive right for a criminal defendant to have his punishment fixed by the jury and that allowing an unconstitutional habitual offender statute to override this right violated the due process of law. Id. at 346. In this case, there is no question that the enhancement provision in § 841 is itself constitutional. Accordingly, there is no Hicks problem with applying the enhancement to constrain the sentencing judge's discretion.

Moving to Ramos's Eighth Amendment argument, Ramos argues that his twenty-year mandatory sentence violates the Constitution's prohibition on cruel and unusual punishment based on the Supreme Court's decision in Ewing v. California, 531 U.S. 11 (2003), which upheld the constitutionality of California's "Three Strikes Law" as applied to a defendant who received a sentence of 25 years to life in prison for committing felony grand theft of three golf clubs. According to Ramos, the Supreme Court "ruled that lengthy recidivist sentences were constitutionally justified not by the severity of the offender's instant conviction, but based on the severity of his or her prior crimes" and, therefore, a "20-year mandatory recidivist enhancement based on a prior misdemeanor offense" must be unconstitutional because of the lack of proportionality between the misdemeanor and the 20-year sentence. Mot. 19.

This argument is misplaced. Although Ramos is correct that the plurality in Ewing made reference to the defendant's "long history of felony recidivism," the Court more precisely explained that when considering whether a sentence under a recidivism enhancement violates the Eighth Amendment's "narrow proportionality principle," Ewing, 538 U.S. at 20 (plurality opinion) (internal quotation marks omitted), courts may take into consideration both the current offense and also the triggering predicate offense, see id. at 29 ("In weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism."). Although it may be possible that Ramos's previous California conviction for possessing with intent to sell marijuana does not on its own support a mandatory 20-year sentence, but see Hutto v. Davis, 454 U.S. 370, 371 (1982) (per curiam) (upholding against an Eighth Amendment challenge consecutive 20-year prison sentences for two counts of possession with intent to distribute marijuana and distribution of marijuana, which offenses involved approximately nine ounces of marijuana), the conduct encompassed by the current

conviction is sufficiently serious to support the imposition of the 20-year sentence. In particular, Ramos was convicted of leading a large-scale drug conspiracy that trafficked in multiple-kilogram quantities of cocaine. Even without considering the prior conviction, the large quantity of cocaine involved meant that Ramos was exposed to a mandatory minimum sentence of 10 years imprisonment and a statutory maximum term of life imprisonment under § 841. Moreover, based on his role in the offense and the large amount of cocaine related to the conspiracy, the Sentencing Guidelines established an advisory range of 292 to 365 months imprisonment. The statutory and guideline ranges at issue in this case make clear that Congress has deemed the specific conduct in which Ramos engaged to be more than sufficiently serious to warrant a sentence of 240 months imprisonment, and Ramos does not have any viable Eighth Amendment claim that such a sentence is disproportionate to the offense he committed.

Lastly, with respect to Ramos's argument that application of the enhancement violates "principles of federalism," as an initial matter, Ramos does not credibly identify any individual right embodied in the Constitution or in a federal statute that allows him to challenge his sentence based on vague notions about the "principles of federalism."[5] In addition, in general,

---

[5] Ramos does cite to Bond v. United States, 564 U.S. 211 (2011), to argue that his enhanced federal sentence "violates his Tenth Amendment right to be free from 'government action taken in excess of the authority federalism defines'" because the continued imposition of the enhancement "ignor[es] the wishes of the people of California in passing Proposition 64." Mot. 18-19. In Bond, the Supreme Court held that a defendant had standing to challenge the enactment of the criminal statute under which she was convicted as "beyond Congress' constitutional authority to enact" and, in particular, as an invalid regulation of purely "local" conduct in violation of the Tenth Amendment. Bond, 564 U.S. at 215, 224. In this case, there is no question that Congress had the constitutional authority to pass § 841, and Ramos's conduct itself related to an international conspiracy that involved importing cocaine from Mexico and transporting it across the United States of America to various states and cities on the East Coast. Accordingly, Ramos does not attempt to argue that § 841 itself exceeds Congress's authority or is a violation of the Tenth Amendment and, therefore, even considering the Court's decision in Bond, he does not credibly identify any individual right violated by the enhancement that could give him a basis to challenge the enhancement on "federalism" grounds.

"state law [does not] normally dictate the meaning of a federal statute, at least absent some evidence Congress sought to defer to and incorporate state law," and there is "no such evidence" that Congress intended to do so with respect to § 841. Dyke, 718 F.3d at 1292. Accordingly, the federal courts are not required to incorporate California's retroactive re-determinations about the seriousness of specific criminal conduct and the related reclassifications of previous offenses when applying the federal sentencing enhancement. Moreover, allowing states to fundamentally and retroactively upend federal sentences through processes such as Proposition 64 "would risk disrupting the uniformity of the federal sentencing structure" and create a serious burden on judicial economy and the finality of federal convictions. Id.; cf. Dickerson v. New Banner Inst., Inc., 460 U.S. 103, 111-12 (1983), superseded by statute, Firearm Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449 (1986) (explaining that interpreting a similar provision in the criminal gun control statutes is "necessarily" a "question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State" and that such a federal lens "makes for desirable national uniformity unaffected by varying state laws, procedures, and definitions of 'conviction'").

### III. CONCLUSION

For the reasons stated above, Ramos has not shown that the imposition of the enhancement under § 841 violates either the Constitution or any federal statute and, as such, he is unable to meet his burden under § 2255 and his Motion to Vacate [Dkt. No. 200] will be DISMISSED by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 24 day of July, 2018.

Alexandria, Virginia

/s/ _____

Leonie M. Brinkema
United States District Judge